OPINION OF THE COURT
Joan B. Lefkowitz, J.
In this matter, petitioner filed petitions in this court, alleg *778 ing that the respondent is chargeable with the support of J. C. and A. C. and seeking a modification of the order of support entered June 14, 1982 (Facelle, J.). Respondent appeared before a Hearing Examiner of this court to answer the petitions and denied the allegations of the petitions. A hearing was held before a Hearing Examiner of this court who determined that there was a change of circumstances since the entry of the order and the order was modified directing respondent to pay the sum of $150 per week for the support of the two children, allocated equally between them.
Respondent objects to the utilization by the Hearing Examiner, in determining the amount of support, of the guidelines set forth in the Child Support Standards Act (CSSA) of 1989 (L 1989, ch 567), which became effective on September 15, 1989. He states that the petition in the instant matter was filed on December 12, 1988, and the hearing was held on February 22, 1989. The Hearing Examiner rendered findings of fact on October 24, 1989 and entered the final order on November 15, 1989. Respondent argues that notwithstanding that the Hearing Examiner did not render her decision in this matter until October 24, 1989, the CSSA should not have been applied.
In the alternative, respondent argues that if the CSSA was correctly applied to this case, the Hearing Examiner should have considered certain deductions which are to be taken into account in determining respondent’s income. Specifically, he alleges that New York City taxes and support payments for dependents other than those involved herein should have been deducted from his income before determining the amount of support pursuant to the CSSA.
The issue to be determined is whether the guidelines set forth in the CSSA are applicable in this matter. The hearing in this matter was held on February 22, 1989. At the conclusion of the hearing, the Hearing Examiner reserved decision. The Hearing Examiner rendered findings of fact and entered the final order after the effective date of the CSSA.
Section 1 of the CSSA sets forth the "Legislative declaration”, which states as follows: "The legislature, mindful of the economic well-being of the children of the state, recognizing that these children are a valuable resource, and further mindful of the failure of many legally responsible individuals to meet in part or in full their child support obligations hereby seeks to remedy that problem. This act attempts to address these deficiencies by adopting guidelines that permit *779 judicial discretion, and establish minimum and meaningful standards of obligations that are based on the premise that both parents share the responsibilities for child support.”
Prior to the enactment of the CSSA, there were no statutory guidelines which a court was mandated to utilize in determining the amount of support a parent was obligated to pay. The court had the discretion to utilize any standard to determine support. As a result, there were wide disparities in the amount of support respondents were ordered to pay in the courts of this State.
The CSSA was enacted as a result of the Federal Family Support Act of 1988 (Pub L 100-17) which required all States to establish specific, numerical guidelines for determining child support. The reasoning behind this statute was that many noncustodial parents were not supporting their children to the best of their ability. The CSSA sets forth specific percentage guidelines which are the minimal standards of support, but provides for judicial discretion in deviating from the formula when the apportioned amount is unjust or inappropriate, or when the income of the noncustodial parent is less than the self-support reserve, which is 135% of the poverty level. The result of the CSSA has been a more uniform and equitable determination of the amount of child support ordered throughout the State of New York.
"The CSSA creates a new step-by-step standardized method of determining the level of child support to be ordered. The legislation rests on the principle that children are entitled to share in the income and standard of living of both parents whether or not they are living together. It establishes a standard of obligation to accommodate special circumstances.” (Reichler and Lefcourt, New Legislation: The Child-Support Standards Act, NYLJ, June 30,1989, at 1, col 1, at 7, col 1.)
In a memorandum by Governor Mario M. Cuomo to the new CSSA, he states as follows:
"For too long, child support has been a national scandal. Courts have ordered child support arbitrarily, and orders, although they have varied widely, almost uniformly have been too low.
"The largest segment of our population living in poverty is children. In New York State in 1984, one out of every four children in New York was living in poverty. Low or non *780 existent child support is a primary cause of childhood poverty. * * *
"To bring fairness to child support, this bill requires both the Family and Supreme Courts to order child support based upon a statutory formula. The formula is based upon parental income. In this way, children will share in the economic status of both their parents, and the duty to support one’s children, regardless of marital status, will be recognized as paramount.” (1989 CLS Session Laws of NY, at Gm-51.)
The Governor states that it is the intent of the CSSA to ensure that "[c]hildren should not unfairly bear the economic burden of their parent’s separation.” (Id., at Gm-52.)
The statute specifically provides that the CSSA is not a change of circumstances permitting a modification of a support order. However, if a change of circumstances is found to exist, the CSSA guidelines can be utilized to modify a support order existing prior to the effective date of the CSSA (Family Ct Act § 413 [l]/7i>.
If the Hearing Examiner had rendered her decision prior to September 15, 1989, she could have utilized any formula she wished, and was only required to consider the five factors set forth in Family Court Act § 413 former (1). Prior to September 15, 1989, section 413 (1) provided that the Hearing Examiner could award support after considering the following: "(i) the financial resources of the parents and those of the child; (ii) the physical and emotional health of the child, and his or her educational or vocational needs and aptitudes; (iii) where practical and relevant, the standard of living the child would have enjoyed had the family remained intact; (iv) where practical and relevant, the tax consequences to the parties; and (v) the non-monetary contributions that the parents will make toward the care and well-being of the child.”
Respondent assumes that had the decision been rendered prior to September 15, 1989, the Hearing Examiner would have rendered a different decision, and that his support obligation would have been in a lesser amount. The court has no reason to presume this state of facts.
Prior to the enactment of the CSSA, the court had discretion to determine the standard of support to be utilized. The court has considered and weighed the necessity and intent of the CSSA to establish uniformity in child support orders in this State. Respondent is employed and is obligated to support his children. The children have the right to benefit from and share in their father’s economic status. It would be unjust to *781 allow the father to reap a financial benefit to the detriment of his children by not requiring him to pay the maximum amount of support. The CSSA, recognizes this and implicitly provides that a noncustodial parent can be required to pay child support up to an amount which equals 135% of the poverty level.
Under all of the circumstances, the court determines that the Hearing Examiner appropriately utilized the guidelines set forth in the CSSA. In reaching this determination, the court has considered the interests of the children and their need for support. However, solely to the extent respondent objects to the failure of the Hearing Examiner to consider whether there are any deductions from income which would affect the total support obligation, this objection is granted.
The matter is remanded to the Hearing Examiner for further hearing at which respondent is granted the opportunity to establish deductions, if any, from his income. If respondent seeks a deduction for child support payments made pursuant to a court order from another court, he is to produce the records of the Support Collection Unit through which those payments are made. If respondent is paying support directly to the mother of the child, he is to establish that there are no support arrears due and owing. Simply because there is an order requiring respondent to pay support, this will not automatically entitle respondent to the deduction. Respondent must establish actual payment pursuant to the support order.
Additionally, both parties are to complete the financial affidavits which are being mailed to them with this decision and order. The parties are to appear in court on March 20, 1990 at 1:30 p.m. with said completed financial affidavits and any other documents, including pay stubs and tax returns, which they wish the Hearing Examiner to consider.
Now, after examination and inquiry into the facts and circumstances of the case, it is hereby
Ordered, that the following issues are hereby remanded to the Hearing Examiner for determination: Whether there are any deductions from respondent’s income which must be considered in determining respondent’s support obligation pursuant to the Child Support Standards Act; and it is further,
*782 Ordered, that the objections are granted to the extent indicated hereinabove, and are denied in all other respects; and it is further,
Ordered that the order entered November 15, 1989 (Martinez-Perez, H. E.) remains in full force and effect, subject to the further order of the court.